IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MARY ANN MYNATT,                    )
                                    )
            Plaintiff,              )
                                    )
                                    )
v.                                  )        No. 3:12-CV-303
                                    )
MORRISON MGT. SPECIALIST, INC.,     )
JENNIFER NICHOLS, and               )
CATHY SAMMONS,                      )
                                    )
            Defendants.             )

## MEMORANDUM

Now before the court is the motion for summary judgment [doc. 30] filed by

defendants Morrison Mgt. Specialists, Inc. ("Morrison"), Jennifer Nichols, and Cathy

Sammons [doc. 30]. Plaintiff *pro se* has not responded to the motion within the time allowed

by the Federal Rules of Civil Procedure and the local rules of this court. For the reasons that

follow, defendants' motion will be granted and this case will be dismissed.

I.

*The Complaint*

"*Pro se* complaints are to be held to less stringent standards than formal

pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v.

Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citation and quotation omitted). The complaint

in this case alleges in full:

> I was discriminated against wrongfully accused of thing's i did'nt do. And
> wrongfully terminated.
>
> . . .
>
> Defendant's discriminated against me. Harrassed me. And falsely accused me
> of thing's i did'nt do. Both defendant's were involved in it. And when i stated
> to them that i was going to call main office an report them i was threatened
> with false time sheet that stated i had been absent and tardy and left work
> early. And i was wrongfully terminated for something i did'nt do.

[Doc. 2, p. 1-2] (spelling and grammar as in original).

Attached to plaintiff's complaint is her April 25, 2012 Right to Sue Letter from

the EEOC. In material part, that letter states:

> . . . You alleged that you were discriminated against because of your race,
> gender and disability.
>
> . . .
>
> . . . [Y]ou complained to Respondent were [sic] always on your back about
> your job, you were not being treated right, [a] male employee gets to smoke
> because he's a male, African American employees are treated better than you
> are and you are unable to catch in the dish room because it is hard to do.

[Doc. 2, p.4].

Reading the complaint and Right to Sue Letter in concert, the court concludes

that it is plaintiff's intention to file suit under the Americans with Disabilities Act ("ADA")

and Title VII of the Civil Rights Act of 1964 ("Title VII"). The court remains mindful,

however, that the less stringent standard applied to *pro se* complaints "does not mean that *pro*

*se* plaintiffs are entitled to take every case to trial" on the basis of futile claims. *See Hahn*

*v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999); *see also Steen v. Detroit Police Dep't*, No.

2

92-2409, 1993 WL 219875, at *1 (6th Cir. June 21, 1993) (citation and quotation omitted) (The less stringent standard "does not compel the courts to conjure up unpleaded facts to support conclusory allegations.").

## II.

### *Relevant Background*

Defendant Morrison provides food and beverage services to medical facilities. In August 2009, Morrison hired plaintiff as a food service worker at Fort Sanders Medical Center ("Fort Sanders"). Plaintiff had worked in that same position for the prior three years as an employee of the business that previously held the Fort Sanders account.

Like many of the other 150 Morrison food service workers at Fort Sanders, plaintiff's job duties were varied and included: loading and unloading ("catching") the commercial dishwashing machine; helping prepare food trays for patients; cleaning, serving, and stocking in the cafeteria; and delivering trays to patients. Each day, food service workers receive a thirty-minute lunch and a ten-minute break.

At all times relevant to this lawsuit, defendant Sammons was plaintiff's supervisor and defendant Nichols was plaintiff's manager. Peter Lanois worked as the Director of Food and Nutrition Services through September 2010 until he was replaced by Brett Johnson. Plaintiff, a female, is Caucasian, as are Lanois, Johnson, Sammons, and Nichols.

3

Plaintiff attended a meeting in August 2009 at which Lanois explained several of Morrison's policies and procedures. In material part, Lanois covered Morrison's Zero Tolerance Discrimination and Harassment Policy which provides that employees may address unresolved issues either: progressively up their supervisory chain; to their human resources representative; to their regional vice president or department head; or to a 1-866 hotline. Plaintiff signed an acknowledgment that she had read this policy. She admits that she understood the procedures and that Lanois "went over the whole thing."

Plaintiff claims that, if requested, Sammons would alter work assignments (within their job description) for African-American employees (namely Margaret Moore, Cynthia Davis, and Malcolm Pride) but not for her. However, plaintiff admittedly does not fully know the circumstances underlying other employees' requests for alternate work assignments. Plaintiff testified only that Sammons once told her that she changed a job assignment for an African-American employee "[b]ecause you know if I don't do it for them, they run across the street to HR . . . ." Plaintiff also claims that Nichols once told her that Sammons "is afraid to say anything to the Black's." Plaintiff later testified that she has no additional evidence that Sammons "was scared to say anything to African Americans and felt she had to do what they wanted." Plaintiff further testified that she has no additional evidence that race was the reason for any modified work assignment received by any African-American employee

4

Plaintiff also complains that Sammons and Nichols would "stay on my darn back all the time." By affidavit, Sammons and Nichols each state, "In or about early 2010, Ms. Mynatt's job performance began to decline. Based on this, I provided Ms. Mynatt with constructive feedback on her work in an effort to improve her job performance."

Plaintiff testified that in March 2010 she asked Lanois to "have a talk with them [Nichols and Sammons] and tell them to stop harassing me like that, and [to] . . . stop staying on my back about things I wasn't doing and stuff like that." Plaintiff also told Lanois that Nichols and Sammons were favoring African-American workers. Morrison placed plaintiff on three days of paid leave while Lanois conducted an investigation.

Lanois responded to each of plaintiff's complaints by letter dated March 24, 2010. In material part, Lanois wrote:

> . . . [Y]ou are encouraged, for your health and safety, to seek medical attention and if needed provide a Physician's medical restriction for those tasks you are unable to perform. If you require restrictions, we will evaluate your ability to perform your current position in light of any restrictions.
>
> . . .
>
> If you are not satisfied with my response to your issues you are welcome to discuss them with my Supervisor, please ask and I will help you contact him.

Around that same time, Lanois also provided plaintiff with an attendance report indicating that she had an excessive number of attendance occurrences.[1] According to

---

[1] Plaintiff testified that she believes Morrison falsified this document. The document, along with a more detailed Employee Timecard Report, is attached to defendants' motion. Plaintiff has come forward with no citation to the record evidencing falsification.

plaintiff, Lanois told her that she could be terminated for excessive absences. Morrison's attendance and lateness guidelines state that seven occurrences in a twelve-month period is grounds for dismissal, and plaintiff had at least six occurrences in the previous eight months.

Offering an example of the alleged racial discrimination, plaintiff testified that on approximately September 6, 2010, Sammons allowed an African-American employee named Nicki to "roll her [Nicki's] silverware" prior to the end of the work shift (thereby permitting Nicki to leave work on time). Sammons did not give plaintiff similar permission.[2] Plaintiff told Sammons, "I am over it and I'm not going to try anymore," resulting in Sammons sending her home. Plaintiff testified that she called "Morrison's number" that day "and I reported it to them" but "never did hear no more about it." Plaintiff further testified that during the phone call she reported that Sammons and Nichols "keeps accusing me of doing stuff I didn't do. They want me to try to do my job and other people's at the same time, and I can't take it no more." According to plaintiff, she told Nichols about the phone call, and Nichols told Lanois.

Offering another example of racial discrimination, plaintiff testified that Sammons once told her to "find something to do" rather than standing around talking. However, on another day, Nichols told "this other African American new girl" not to "talk out in the hallway, go in the back of the dish room and talk."

---

[2] By affidavit, Sammons states that Nicki was allowed to roll silverware because she had completed all other duties on her work station, whereas plaintiff had not.

Plaintiff also testified that an African-American employee named Brenda once said "'hell' and 'damn'" in Sammons' presence and was not disciplined. Plaintiff opined "if that had been me," Sammons would have sent her to the office. Admittedly, however, plaintiff was never disciplined for cursing.

Plaintiff testified that she believes Sammons wanted to "make examples out of me because she was afraid to tell the African Americans anything. She could make an example out of me, aiming at them, you better straighten up or this can happen to you too."

On September 9, 2010 (three days after plaintiff's call to Morrison's 1-866 number), Lanois again provided her with an attendance report showing an excessive number of attendance occurrences.[3] Plaintiff testified that she received the report after she told Nichols "that I was calling Morrison's again." According to plaintiff's testimony, Lanois and Nichols at that time gave her a final written warning based on attendance issues.

Plaintiff also testified that Sammons and Nichols discriminated against her because of her gender. Specifically, plaintiff testified that the defendants allowed a Caucasian employee named Joe to take excessive smoke breaks and "go upstairs and talk." Plaintiff states that she did not receive the same degree of leniency. Plaintiff testified that she believes Joe was favored by Sammons and Nichols because he is a man.

---

[3] Plaintiff again claims that Morrison falsified this document. Again, attached to defendants' motion is the relevant Employee Timecard Report. Again, plaintiff has come forward with no citation to the record suggesting that any entry is incorrect.

7

Medically, plaintiff claims to suffer from back pain and carpal tunnel syndrome. She testified that she saw a doctor in 2009 for her back complaints "and they [the doctor] basically said they really couldn't find nothing wrong with it then, that it was just like a strain or something." Plaintiff never provided Morrison with any documentation of back-related work restrictions.[4]

Plaintiff testified that in April 2010 she asked Sammons not to assign her to "catching" (unloading the commercial dishwasher) or beverage duties because those tasks caused pain in her back and arms. Regarding her alleged carpal tunnel syndrome, plaintiff testified that she "kept reporting it to Jennifer [Nichols] and she said she would have to get with Peter [Lanois], which was the director, and she never got back with me." However, plaintiff also testified that by March 2010 she had already complained directly to Lanois regarding the back and carpal tunnel issues. Plaintiff further admitted twice in her deposition that Lanois "told me I needed to get a doctor's statement," which she did not do. In fact, one of plaintiff's March 2010 discrimination complaints to Lanois was that he was requiring her to obtain a doctor's statement.

Plaintiff testified that Nichols and Sammons "would make little comments like, 'God, you are so slow or speed it up or my grandma can go faster than that,' just little stuff

---

[4] Plaintiff attempts to cast blame on her decision to cancel her health insurance and the defendant's alleged unwillingness to allow her time off for a doctor's appointment. However, the record indicates that plaintiff visited a free medical clinic on at least one occasion. Her work shift regularly ended at 3:30 p.m., which would have allowed her sufficient time to visit a doctor during regular business hours.

like that." Plaintiff testified that she has no evidence that these comments were based on her alleged disabilities. According to plaintiff, Nichols would counsel her on her job performance a couple of times each week "because she was a new manager and she wanted to be in total control of anybody and everybody and kind of reminded me like a school kid bullying people." Plaintiff further testified that she believed Nichols wanted to "[s]et an example for the others of what could happen," and that Nichols' sole motivation was "[w]ant[ing] to be in control." Plaintiff testified that Sammons treated her the way she did in order to "get in good with" Nichols.

Plaintiff received medical treatment in September 2010 after "slamm[ing her] elbow in the plate warmer." Dr. J. Donald King's September 27 notes mention a *history of* bilateral carpal tunnel syndrome but state that plaintiff "may return to her regular duties but may wear a neoprene elbow sleeve" to assist with the recent injury. A follow-up appointment one week later again focused on plaintiff's elbow. Dr. King imposed no restriction or impairment of any sort.

On the morning of October 8, 2010, plaintiff had a disagreement with Nichols and Sammons regarding the duration of her break that morning. Plaintiff testified that the break only lasted the authorized ten minutes, but that the defendants accused her of being gone as long as 45 minutes. During the conversation, plaintiff told Nichols that she was leaving for the day because she was "sick at my stomach . . . like those anxiety attacks I have." Nichols cautioned plaintiff that she could be terminated for excessive absenteeism

9

if she left.  Plaintiff responded that she had to go home because she was sick, and that if Morrison did decide to terminate her, "I'll see you in court."

On October 11, 2010, Johnson notified plaintiff that she had been fired for insubordination and for leaving work without authorization.  Plaintiff testified that she responded that "I think that I was really being terminated because I told [Nichols] that I thought I had another stroke and I needed to go get blood work done and she told me I would have to get somebody to cover myself, and because of the carpal tunnel, and I think that was the real reason why I was terminated . . . ."[5]  By affidavit, Sammons and Nichols each state, "I did not believe that Ms. Mynatt had a disability during her employment."

On January 28, 2011, plaintiff filed a discrimination complaint with the Tennessee Human Rights Commission.  She alleged racial, gender, age, and disability discrimination along with harassment, retaliation, wrongful discharge, and failure to accommodate her disabilities (carpal tunnel syndrome and "possible stroke").

III.

*Relevant Authority*

As noted, plaintiff has not responded to the pending motion.  "Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought."  E.D. TN. LR. 7.2.  Nonetheless, this court is required to carefully examine a pending dispositive

---

[5]  Plaintiff testified that sometime around September 2010 she told Nichols that "they think I have had another stroke . . . ."  Admittedly, plaintiff has never been diagnosed as having suffered a stroke at that time, nor were there any aftereffects of the alleged stroke.

10

motion to ensure that the sought-after relief is warranted. *See Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).

Defendants' motion is brought pursuant to Federal Rule of Civil Procedure 56, which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may discharge its burden by demonstrating that its opponent has failed to establish an essential element of that party's case for which it bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion[.]" This can be done by citation to materials in the record, which include depositions, documents, affidavits, and electronically-stored information. Fed. R. Civ. P. 56(c)(1)(A).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence in support of its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission

to a jury or whether one party must prevail as a matter of law. *Id.* at 251-52. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(2).

IV.

*Analysis*

In this court, plaintiff alleges race and gender discrimination, along with retaliation and hostile work environment, in violation of Title VII. She also alleges discrimination, failure to accommodate, and retaliation in violation of the ADA. The court will address these and other issues in turn.

A. Defendants Nichols and Sammons

There is no individual liability under Title VII or the ADA. *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405-06 (6th Cir. 1997). Summary judgment will therefore be granted in favor of defendants Nichols and Sammons as to all claims against them.

B. Timeliness

At her deposition, plaintiff recalled a number of allegedly discriminatory incidents taking place prior to March 24, 2010. [Doc. 32, ex. 1, p. 56-81, 92-95, 116-118, 130-31]. Plaintiff did not file her EEOC charge until January 28, 2011 - more than 300 days

after March 24, 2010. Plaintiff's factual complaints predating March 24, 2010, are accordingly time-barred due to her failure to exhaust administrative remedies.

> . . . To exhaust administrative remedies, an aggrieved person in a deferral state such as Tennessee must file a formal charge of discrimination with the EEOC or the Tennessee Human Rights Commission within three hundred (300) days of the allegedly discriminatory action. . . .

> . . . '[A] party must file a charge within . . . 300 days of the date that a discrete retaliatory or discriminatory act "occurred" or lose the ability to recover for it.' If the employee fails to file an EEOC complaint related to that action within the allowed statutory period, a defendant employer is entitled to treat a past act as lawful.

*Blackburn v. Shelby County*, 770 F. Supp. 2d 896, 916-18 (W.D. Tenn. 2011) (citing and quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *United Air Lines v. Evans*, 431 U.S. 553, 558 (1977)). Summary judgment will therefore be granted in defendants' favor as to all allegedly discriminatory conduct taking place more than 300 days prior to January 28, 2011.

## C. Age Discrimination

On her EEOC charge form, plaintiff marked "age" as one of the bases of discrimination, but she presented no details on that issue. The court has carefully reviewed the complaint and deposition in this case and finds no indication that plaintiff intended to raise an age discrimination claim in this court. The issue of age discrimination requires no further discussion.

13

## D. Title VII

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . [or] sex . . . ." 42 U.S.C. § 2000e-2(a)(1). Additionally, Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

At summary judgment, the court evaluates a Title VII claimant's inferential and circumstantial evidence using the familiar *McDonnell Douglas* burden-shifting approach. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In *McDonnell Douglas* the Supreme Court established "the order and allocation of proof in a private, non-class action challenging employment discrimination . . . ." *Id.* at 800-03. Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination. *Id.* at 802. The elements necessary to make a *prima facie* showing will vary depending on the facts of each case and the type of discrimination alleged. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575-76 (1978).

Plaintiffs bear the burden of persuasion throughout the entire process. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000). If a plaintiff is

14

able to establish her *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* at 792-93 (citation omitted). If the employer successfully provides such a reason, *McDonnell Douglas*'s regime then places the final burden on the plaintiff to "demonstrate by competent evidence" that the employer's proffered reason is in fact merely a pretext. *McDonnell Douglas*, 411 U.S. at 805. Pretext may be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

A claimant may not establish pretext merely by questioning the soundness of her employer's personnel decisions. *See Wilkins v. Easton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986). Courts should refrain from sitting as a "super-personnel department" second-guessing employers' business judgment. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 960 (8th Cir. 1995)).

1. *Gender Discrimination*

Plaintiff may establish her *prima facie* case of gender discrimination by showing that: (1) she belongs to a protected class; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position in question; and (4) she was replaced by a person of the opposite gender, or a similarly situated non-protected individual was treated more favorably. *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004).

15

Plaintiff has not made out her *prima facie* case because she has not shown that she was subjected to an adverse employment decision. Plaintiff testified only that a male employee was allowed to smoke more and talk more. Adverse employment actions are characterized by "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 886 (6th Cir. 1996) (citation omitted). Mere inconveniences and bruised egos do not make an action adverse. *See id.* "[D]e minimis employment actions are not materially adverse and, thus, not actionable." *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002)

In this case, plaintiff admittedly was never demoted, suspended, denied a promotion, or subjected to a salary reduction or negative change in work hours on the basis of her gender. Her gender-related complaints amount to no more than conspiracy theories and workplace trivialities. Subjective assessments, personal beliefs, conjecture, and speculation are insufficient to prove a *prima facie* case. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 463 (6th Cir. 2001); *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986). Defendants are therefore entitled to summary judgment on plaintiff's gender discrimination claim.

16

## 2. *Racial Discrimination*

Plaintiff alleges that she was discriminated against on the basis of her race, as "reverse discrimination" in violation of Title VII. Plaintiff, a white female, contends that she was subject to reverse discrimination because African-American employees were not disciplined and were allowed more varied work assignments. Defendant argues that summary judgment on this claim is appropriate because plaintiff cannot make out her *prima facie* case.

A *prima facie* case of reverse discrimination is established by showing that: (1) "background circumstances . . . support the suspicion that the defendant is that unusual employer who discriminates against the majority"; (2) plaintiff suffered an adverse employment action; (3) she was qualified for her position; and (4) Morrison treated differently employees of another race who were similarly situated to plaintiff. *See Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004) (citation omitted). In order for plaintiff to show she was similarly situated to the African-American workers about whom she complains, she "must prove that all of the relevant aspects of [her] employment situation are 'nearly identical' to" theirs. *Id.* at 691 (citation omitted).

Plaintiff has failed to establish her *prima facie* case for at least two reasons. First, she admittedly has no knowledge of the circumstances underlying the alleged job duty modification received by any African-American worker. Plaintiff does not know, for example, whether those workers had medical documentation supporting their requests.

17

Plaintiff therefore has not shown that *similarly situated* African-American workers were treated differently than she was.

As for plaintiff's allegation that she was disciplined more harshly than African-Americans, plaintiff offers only her *belief* that Sammons wanted to "make examples out of me because she was afraid to tell the African Americans anything." However, "conspiratorial theories" fall short of the specific facts required by Federal Rule of Civil Procedure 56. *See Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002) (citing and quoting *Visser v. Packer Eng'g Assocs.*, 924 F.2d 655, 659 (7th Cir. 1991)) ("holding that summary judgment was appropriate where the inferences plaintiff sought to draw from evidence were akin to 'flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from [personal] experience.'"). Further, plaintiff elsewhere affirmatively testified that she believed she was frequently counseled on her job performance because Nichols "was a new manager and she wanted to be in total control of anybody and everybody and kind of reminded me like a school kid bullying people," and that the only reason Nichols treated her the way she did was because she "[w]anted to be in control." Plaintiff testified that Sammons treated her the way she did in order to "get in good with" Nichols. A non-movant cannot create a material issue of fact merely by contradicting her own testimony. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). Again, plaintiff has failed to show that a similarly situated African-American employee was treated differently than she was.

18

Plaintiff also has not shown that she suffered an adverse employment action. She admittedly was never assigned tasks outside of her job description but is upset that she did not always get the assignments she preferred. "Assignment to undesirable, difficult or heavier duties is not an adverse employment action." *Moling v. O'Reilly Auto.*, 763 F. Supp. 2d 956, 973 (W.D. Tenn. 2011).

While a plaintiff can demonstrate an adverse employment action by showing that she was constructively discharged, *see Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001), plaintiff has not done so. "A constructive discharge claim 'depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee.'" *Talley v. Family Dollar Stores of Ohio*, 542 F.3d 1099, 1107 (6th Cir. 2008) (quoting *Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir. 2004)). A claim of constructive discharge requires a showing that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Held v. Gulf Oil*, 684 F.2d 427, 432 (6th Cir. 1982) (citation omitted); *see also Kocsis*, 97 F.3d at 887. However, "resignations and retirements are presumed to be voluntary. An apparently voluntary resignation does not rise to the level of a constructive discharge unless it is objectively reasonable for the employee to leave under the circumstances." *Nunn v. Lynch*, 113 F. App'x 55, 59 (6th Cir. 2004) (citations omitted).

19

In *Logan*, the Sixth Circuit addressed the meaning of the term "constructive discharge."

> To demonstrate a constructive discharge, Plaintiff must adduce evidence to show that 1) the employer . . . deliberately create[d] intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit. . . . To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined.

*Logan*, 259 F.3d at 568-69 (internal quotation marks and citations omitted). In *Logan*, the Sixth Circuit set forth factors a court should consider when determining whether an employer has created working conditions that a reasonable person would consider intolerable. The Court stated:

> Whether a reasonable person would have [felt] compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id*. at 569 (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)). Plaintiff has the burden of demonstrating that she was constructively discharged.

> [I]n order to show that she suffered a constructive discharge, Plaintiff ha[s] to come forward with evidence to demonstrate that the working conditions under which she labored were so difficult that a reasonable person standing in her shoes would have felt compelled to resign; and that Defendant intended to cause Plaintiff to resign or that her resignation was a reasonably foreseeable consequence of Defendant's actions.

*Logan*, 259 F.3d at 567.

20

Most importantly in the present case, plaintiff did not quit her job. She was fired. In any event, plaintiff has not triggered any of the *Logan* constructive discharge factors. She was not demoted. She did not receive a reduction in salary or job responsibilities, nor was she reassigned to menial or degrading work. At all times, she performed tasks within her job description. Plaintiff has not shown what a reasonable person would deem intolerable working conditions that would cause a reasonable person to quit their job, rather than pursuing their complaint through Morrison's Zero Tolerance Discrimination and Harassment Policy. Further, plaintiff has made no effort to show that the counselings, attendance reports, or refusals to accommodate were intended by the defendant to make her quit her job.

This court cannot and will not make a party's arguments for her, and the instant plaintiff has fallen far short of making her necessary showing. *See U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997) ("It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment, and that the court is not required to search the record for some piece of evidence which might stave off summary judgment."). Plaintiff has not made out her *prima facie* case.

Even if she had, defendants have articulated non-discriminatory reasons for their actions. The affidavits of Nichols and Sammons state that plaintiff was frequently counseled due to the declining quality of her work. Further, plaintiff did not receive her

21

desired job assignments because she refused to submit the requested medical documentation.

Plaintiff has not "demonstrated by competent evidence" that these reasons are pretext.

Instead, plaintiff offers only her own speculation that she was "made an example" because

she is white. "Where the defendant demonstrates that after a reasonable period of discovery

the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the

complaint to support an essential element of his or her case, summary judgment should be

granted." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). For all these reasons,

summary judgment will be granted on plaintiff's racial discrimination claim.

### 4. *Hostile Work Environment*

Plaintiff also raises a claim of hostile work environment based on her race.

"[T]he conduct in question must be judged by both an objective and a subjective standard:

[t]he conduct must be severe or pervasive enough to create an environment that a reasonable

person would find hostile or abusive, and the victim must subjectively regard that

environment as abusive." *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999)

(citation omitted).

Plaintiff has not cited conduct that a reasonable person would find hostile or

abusive. Again, plaintiff did not receive her requested job assignments because she herself

refused to provide medical documentation. As to the criticisms from her supervisors,

"[c]onversations between an employee and his superiors about his job performance does not

constitute harassment simply because they cause the employee distress." *Keever v. City of*

22

*Middletown*, 145 F.3d 809, 813 (6th Cir. 1998).  Summary judgment will be granted on plaintiff's hostile work environment claim.

## 5. *Retaliation*

Plaintiff also raises a race-based claim of retaliation, which is again analyzed under the *McDonnell Douglas* burden-shifting framework.  *See DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004).  To demonstrate a *prima facie* case of retaliation under Title VII, a plaintiff must prove: "(1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Ford v. Gen. Motors Corp*., 305 F.3d 545, 552-53 (6th Cir. 2002) (citations omitted).  Once the plaintiff has made out a *prima facie* case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for its actions.  *Id*. at 553.  If the employer articulates such a reason, the burden returns to the plaintiff to demonstrate that the proffered reason is pretextual.

The court will presume, without deciding, that plaintiff engaged in protected activity when she called Morrison's corporate number in September 2010 to complain about the allegedly preferential treatment received by "Nicki."  The court further notes that Nichols and Lanois knew about the call.

Plaintiff has not shown, however, that the defendants subsequently took an adverse employment action against her which was causally connected to the protected

activity. There are two possible retaliations here: the allegedly false attendance report generated shortly after her call, and her termination one month later.

As to the report, the court again stresses that plaintiff has cited no evidence whatsoever indicating that any of the occurrences on that report were falsified. Receipt of a factually-correct attendance warning is not an adverse employment action. *See Melton v. United States Dep't of Labor*, 373 F. App'x 572, 577-78 (6th Cir. 2010); *Hegger v. Visteon Auto. Sys.*, 186 F. App'x 555, 560 (6th Cir. 2006).

Turning to the termination, plaintiff's own testimony defeats any claim that she was fired in retaliation for the "Nicki" phone call. Plaintiff testified, "I think that I was really being terminated because I told [Nichols] that I thought I had another stroke and I needed to go get blood work done and she told me I would have to get somebody to cover myself, and because of the carpal tunnel, and I think that was the real reason why I was terminated . . . ." Again, a plaintiff cannot create a material issue of fact merely by contradicting herself. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). Further, "[s]ubjective beliefs, without affirmative evidence, are insufficient to establish a claim of retaliation." *Adair v. Charter County of Wayne*, 452 F.3d 482, 491 (6th Cir. 2006).

Plaintiff has not established a *prima facie* case of retaliation under Title VII. Summary judgment will be granted on this claim.

## E. <u>ADA</u>

### 1. *Discrimination*

To establish a *prima facie* claim of discrimination under the ADA, a plaintiff must demonstrate that: (1) she is an individual with a disability, or was regarded as so by her employer; (2) she was 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and (3) she suffered an adverse employment decision because of the actual or employer-perceived disability. *See Anderson v. Inland Paperboard & Packaging*, 11 F. App'x 432, 435, 437 (6th Cir. 2001).

The court initially observes that there is no proof in the record that plaintiff is an individual with a disability as defined by the ADA. "Disability" is an individualized and context-dependant showing. *See McPherson v. Fed. Express Corp.*, 241 F. App'x 277, 281 (6th Cir. 2007). "The term 'disability' means, with respect to an individual – (A) a physical or mental impairment that substantially limits one or more major life activities of such individual . . . or being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1).

Plaintiff has offered no proof that the alleged back problems, carpal tunnel syndrome, and/or stroke substantially limit a major life activity. Similarly, there is no proof that the defendant regarded her as disabled. By affidavits, Nichols and Sammons state, "I did not believe that Ms. Mynatt had a disability during her employment." Those affidavits are uncontroverted.

Therefore, plaintiff in this case has not demonstrated that she meets the definition of "individual with a disability," and she has thus failed to establish a *prima facie* case of discrimination under the ADA. Defendants are entitled to summary judgment on this claim.

## 2. *Failure to Accommodate*

Plaintiff also alleges that defendants violated the ADA by denying her an accommodation. Defendants respond that plaintiff was not denied an accommodation, but that rather that she is to blame for not providing medical documentation to support her request for altered duties.

In order to establish a *prima facie* case under the ADA for failure to provide a reasonable accommodation, a plaintiff must establish that she is disabled and "otherwise qualified" for the job, with or without an accommodation. *See Keith v. County of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). If a plaintiff makes out her *prima facie* case, "the burden shifts to the defendant to show that accommodating the plaintiff would impose an undue hardship on the operation of its business." *Id.*

The court again notes that plaintiff has not shown that she is disabled for purposes of the ADA. For that reason alone, her failure to accommodate claim fails.

Moreover, a request for an accommodation involves use of an interactive process between employer and employee.

26

The ADA's regulations indicate that, [t]o determine the appropriate reasonable accommodation [for a given employee,] it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]. The purpose of this process is to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations. Accordingly, [t]he interactive process requires communication and good-faith exploration of possible accommodations. Even though the interactive process is not described in the statute's text, the interactive process is mandatory, and both parties have a duty to participate in good faith. When a party obstructs the process or otherwise fails to participate in good faith, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Kleiber v Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007) (internal quotation marks, citations, and footnote omitted).

In this case, Morrison justifiably asked plaintiff for medical documentation to support her requested accommodation, which was not provided, and the interactive process was not completed.

An employer need not accept an employee's word that the employee has an illness that may require accommodation and the employer instead may attempt to confirm or disprove the employee's representation, such as by requiring that the employee provide medical documentation sufficient to prove that he has a condition that needs accommodation or by requiring that the employee undergo a medical exam.

*Sansom v. Cincinnati Bell Tel.*, No. C-1-08-235, 2009 WL 3418646, at *9 (S.D. Ohio Oct. 19, 2009) (citing *Kennedy v. Superior Printing*, 215 F.3d 650, 656 (6th Cir. 2000) (citing *EEOC v. Prevo's Family Mkt.*, 135 F.3d 1089, 1094-95 (6th Cir. 1998); 29 C.F.R. pt. 1630, App. § 1630.14(c))); *see also Israel v. Tenn. Dep't of Mental Health & Developmental Disabilities*, No. 3:04-CV-314, 2006 WL 2559710, at *8 (E.D. Tenn. Sept. 5, 2006)

("Furthermore, the ADA ... allow[s] employers to make inquiries into an employee's medical conditions or require medical examinations in order to reasonably accommodate that employee.").

Defendant requested substantiating medical information, and plaintiff did not provide it. By not submitting the requested information, plaintiff did not participate in the interactive process in good faith, and thus impeded that interactive process. A reasonable employee would have obtained the medical documentation, continued to discuss options, and allowed the interactive process to proceed.

Plaintiff has not shown that she was a "qualified individual with a disability" or that Morrison failed to accommodate her under the ADA. Summary judgment will be granted on this claim.

### 3. *Retaliation*

Lastly, plaintiff claims that she was terminated in retaliation for her complaints regarding the alleged stroke and carpal tunnel syndrome. Under the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a) (as quoted in *Penny v. United Parcel Serv.,* 128 F.3d 408, 417 (6th Cir. 1997)). A plaintiff need not be disabled, or regarded as disabled, to succeed on an ADA retaliation claim. *See Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007).

To establish a *prima facie* case of retaliation under the ADA, a plaintiff must demonstrate:

> (1) he engaged in protected activity; (2) his engagement in that protected activity was known to his employer; (3) his employer, thereafter, took an adverse employment action against him; and (4) a casual link exists between his engagement in the protected activity and the adverse employment action.

*Clark v. City of Dublin*, 178 F. App'x 522, 525 (6th Cir. 2006) (citations omitted). If plaintiff demonstrates a *prima facie* case, the burden shifts to the defendants to set forth a legitimate, nondiscriminatory reason for the adverse employment action. *Penny*, 128 F.3d at 417. "The plaintiff, of course, bears the ultimate burden of proving that the proffered reason for the action was merely a pretext for discrimination." *Id.*

Presuming, without deciding, that the present plaintiff has made out her *prima facie* case, defendants have responded with a legitimate, nondiscriminatory reason for the termination. Plaintiff was fired for insubordination and job abandonment, having already received a final warning on attendance issues. Plaintiff has not "demonstrated by competent evidence" that this reasoning is pretext. Instead, plaintiff again offers only her opinion that the attendance reports were falsified and that she was fired because of health complaints.

Again, "[i]t is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment, and that the court is not required to search the record for some piece of evidence which might stave off summary judgment." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997).

"Subjective beliefs, without affirmative evidence, are insufficient to establish a claim of retaliation." *Adair v. Charter County of Wayne*, 452 F.3d 482, 491 (6th Cir. 2006).

For these reasons, defendants are entitled to summary judgment on the ADA retaliation claim.

V.

*Conclusion*

For the reasons stated herein, defendants' summary judgment motion will be granted, and this civil action will be dismissed. An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan
United States District Judge